BNDDUTY,BNDLMR

# U.S. District Court
# Southern District of Florida (Miami)
# CRIMINAL DOCKET FOR CASE #: <u>1:23−mj−02712−LMR−1</u>

Case title: USA v. Lopez et al

Date Filed: 04/12/2023

Date Terminated: 04/18/2023

Assigned to: Magistrate Judge Lisette M. Reid

**<u>Defendant (1)</u>**

**Alvaro Lopez**
53663−510
*YOB 1972 ENGLISH*
*TERMINATED: 04/18/2023*

represented by   **Fernando LaTour Tamayo**
Coffey Burlington
2601 South Bayshore Drive
Penthouse One
Miami, FL 33133
306−858−2900
Email: ftamayo@coffeyburlington.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Temporary*

**<u>Pending Counts</u>**

None

**<u>Disposition</u>**

**<u>Highest Offense Level (Opening)</u>**

None

**<u>Terminated Counts</u>**

None

**<u>Disposition</u>**

**<u>Highest Offense Level (Terminated)</u>**

None

**<u>Complaints</u>**

WARRANT/INDICTMENT/SDNY/CONSPIRACY
TO COMMIT WIRE FRAUD AND HONEST
SERVICES WIRE FRAUD

**<u>Disposition</u>**

**<u>Plaintiff</u>**

**USA**

represented by

**Noticing AUSA CR TP/SR**
Email: Usafls.transferprob@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 04/12/2023 | 1 | | Magistrate Judge Removal of Indictment from Southern District of New York Case number in the other District 23−CRIM−133 as to Alvaro Lopez (1), Fabiola Cino (2). (dgj) (Entered: 04/13/2023) |
| 04/12/2023 | 2 | | Order to Unseal as to Alvaro Lopez, Fabiola Cino Signed by Magistrate Judge Lisette M. Reid on 4/12/2023. (dgj) (Entered: 04/13/2023) |
| 04/12/2023 | 3 | | Minute Order for proceedings held before Magistrate Judge Lisette M. Reid: Initial Appearance in Rule 5(c)(3)/Rule 40 Proceedings as to Alvaro Lopez held on 4/12/2023. Bond recommendation/set: Alvaro Lopez (1) $250K PSB w/2 CO−SIGNORS REQ BY GVT. Date of Arrest or Surrender: 4/12/23. ***Deft shall not be released until special conditions of release are imposed.*** Bond Hearing set for 4/17/2023 10:00 AM in Miami Division before MIA Duty Magistrate Judge. Removal Hearing set for 4/17/2023 10:00 AM in Miami Division before MIA Duty Magistrate Judge. Report Re: Counsel Hearing set for 4/17/2023 10:00 AM in Miami Division before MIA Duty Magistrate Judge. Attorney added: Fernando LaTour Tamayo for Alvaro Lopez<br><br>It is ORDERED AND ADJUDGED that pursuant to the Due Process Protections Act, the Court confirms the obligation of the United States to produce all exculpatory and impeachment evidence to the defendant pursuant to Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, and orders it to do so. Failing to do so in a timely manner may result in consequences, including, but not limited to, exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, or sanctions by the Court. (Digital 14:05:20/14:36:16/14:49:17/14:58:25) Signed by Magistrate Judge Lisette M. Reid on 4/12/2023. (dgj) (Entered: 04/13/2023) |
| 04/12/2023 | 4 | | NOTICE OF TEMPORARY ATTORNEY APPEARANCE: Fernando LaTour Tamayo appearing for Alvaro Lopez (dgj) (Entered: 04/13/2023) |
| 04/13/2023 | 7 | | PAPERLESS Order as to Alvaro Lopez, Fabiola Cino. A Status Re: Bond Hearing is set for 4/14/2023 at 10:00 AM in Miami Division before MIA Duty Magistrate Judge. Signed by Magistrate Judge Lisette M. Reid on 4/13/2023. (mdc) (Entered: 04/13/2023) |
| 04/14/2023 | 8 | | $250,000.00 PSB Bond Entered as to Alvaro Lopez Approved by Magistrate Judge Lisette M. Reid. *Please see bond image for conditions of release.* (kan) (Additional attachment(s) added on 4/17/2023: # 1 Restricted Bond with 7th Page) (kan). (Entered: 04/17/2023) |
| 04/14/2023 | 9 | | Minute Entry for proceedings held before Magistrate Judge Lisette M. Reid: Status RE Cosignors on Bond & Conditions Hearing as to Alvaro Lopez held on 4/14/2023. Bond set: Alvaro Lopez (1) $250,000 PSB & $250,000 10% (no Nebbia). (Digital 10:14:45) (at) (Entered: 04/17/2023) |

| 04/17/2023 | 12 | | Minute Order for proceedings held before Ch. Magistrate Judge Edwin G. Torres: Status Conference re Rpt Re: Counsel as to Alvaro Lopez held on 4/17/2023. Counsel and Defendants not present. (Report Re: Counsel Hearing and Removal Hearing reset for 4/18/2023 10:00 AM in Miami Division before MIA Duty Magistrate Judge.) (Digital 11:12:19) Signed by Ch. Magistrate Judge Edwin G. Torres on 4/17/2023. (kan) (Entered: 04/18/2023) |
|---|---|---|---|
| 04/18/2023 | 14 | | WAIVER of Rule 5(c)(3)/Rule 40 Hearing by Alvaro Lopez (kan) (Entered: 04/18/2023) |
| 04/18/2023 | 15 | | Minute Order for proceedings held before Ch. Magistrate Judge Edwin G. Torres: Report Re: Counsel Hearing as to Alvaro Lopez held on 4/18/2023. Counsel appears for the SD/FL only. Removal Hearing as to Alvaro Lopez held on 4/18/2023. Defendant WAIVES Removal, Waiver executed and ORDERED removed to the SD/New York. (Digital 10:09:06) Signed by Ch. Magistrate Judge Edwin G. Torres on 4/18/2023. (kan) (Entered: 04/18/2023) |
| 04/18/2023 | 16 | | ORDER OF REMOVAL ISSUED to District of USDC for the Southern District of New York as to Alvaro Lopez. Closing Case for Defendant. Signed by Ch. Magistrate Judge Edwin G. Torres on 4/18/2023. *See attached document for full details.* (kan) (Entered: 04/18/2023) |

ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**23-MJ-02712-REID**

- - - - - - - - - - - - - - - - - - - - - - - - X

FILED BY_____ MM _____D.C.

UNITED STATES OF AMERICA

**SEALED INDICTMENT**

Apr 12, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

- v. -

23 Cr.  (  )

LARS WINKELBAUER,
ABILASH KURIEN,
CARLTON LLEWELLYN,
ROBERT SCHIRMER,
SKYE XU,
BENJAMIN WEI,
  a/k/a "Ben Wei,"
ALVARO LOPEZ,
FABIOLA CINO,
ORLANDO WONG, and
PATRICK LAU,
  a/k/a "Pat Lau,"

**23 CRIM 133**

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - X

## COUNT ONE

**(Conspiracy to Commit Wire Fraud and Honest Services Wire Fraud)**

The Grand Jury charges:

### OVERVIEW

1.  From at least in or about 2009 through in or about July 2021, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and unknown, participated in a massive scheme to defraud Polar Air Cargo Worldwide, Inc. ("Polar"), a cargo airline headquartered in the Southern District of New York and one of the world's leading

air-cargo companies, operating in North America, South America, Asia, Europe, and the Middle East, of tens of millions of dollars in revenue and the honest services of its employees.

2.     At all relevant times, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, (collectively, the "Executive Defendants") were senior executives of Polar. SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, (collectively, the "Vendor Defendants") owned and operated various Polar vendors and customers. Throughout the scheme, WINKELBUAER and KURIEN oversaw substantial segments of Polar's business and had visibility into nearly all of Polar's operations. WINKELBAUER and KURIEN orchestrated the scheme, using their positions within Polar to manipulate Polar's procurement and contracting processes for their own and their co-conspirators' benefit, at the expense of Polar and of Polar's legitimate vendors and customers. In particular, the Executive Defendants agreed to accept millions of dollars in kickbacks from the Vendor Defendants and the vendors they controlled or for which they worked, and also reaped substantial financial benefits as a result of secret ownership interests in certain Polar vendors, in exchange for ensuring that those vendors—including the ones controlled by the Vendor Defendants, or which employed the Vendor Defendants—received favorable business arrangements with Polar. The fraud they perpetrated led to pervasive corruption of Polar's business, touching nearly every aspect of the company's operations, for over a decade.

3.     Polar is the result of a 2007 joint venture between a publicly traded airline, headquartered in the Southern District of New York (the "Parent Airline"), and a leading provider of courier and package delivery services (the "Courier Company"). The joint venture was

designed, in part, to ensure that the Courier Company had dedicated cargo space on flights operated by Polar, in order to transport parcels in a reliable and timely manner.

4.     From at least in or about 2009 through in or about July 2021, Polar relied heavily on third-party, general sales agents ("GSAs") in the United States to sell the cargo space that was not allocated to the Courier Company. This available cargo space was intended to be sold at shipping rates consistent with market demand. In turn, the GSAs hired by Polar often sold available cargo space to freight forwarding vendors, which had been hired by downstream customers to coordinate transportation logistics for large quantities of goods. For its part, Polar generally paid GSAs based on the amount of cargo sold to freight forwarders. Polar also contracted with ground handling vendors to load and unload cargo, and with trucking vendors to transport cargo from domestic locations to the appropriate airports. Polar also contracted with other partners for a variety of business reasons, including to secure cargo space on airline routes not serviced by Polar flights.

5.     Together, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and unknown, defrauded Polar by corrupting Polar's relationships with GSAs, freight forwarders, and other vendors, including those providing ground handling and trucking services. Unbeknownst to Polar, the Executive Defendants utilized their positions within Polar to secure, among other things, favorable contracts, valuable cargo space, favorable shipping rates, and enrollment in various incentive programs for the Vendor Defendants and their entities. In return, the Vendor Defendants paid the Executive Defendants kickbacks in various forms, including, for example, in payments calculated per kilo of cargo shipped with Polar,

or as a percentage of the revenue earned as a result of a vendor's relationship with Polar. In addition, the Executive Defendants, in various combinations, held concealed ownership positions in certain companies which contracted with Polar and that were, in at least one case, associated with the Vendor Defendants. As a result, the Executive Defendants received ownership distributions based, in large part, on revenue derived from contracts with Polar—contracts that had been secured and often times renewed due to, in large part, the recommendation of the Executive Defendants with conflicts of interest.

6. To conceal the kickbacks and conflicted ownership interests from Polar, and thereby to continue the fraud scheme, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others known and unknown, often directed the kickbacks and ownership distributions be paid to limited liability companies with non-descript names that were, in fact, controlled by the Executive Defendants. Additionally, the Executive Defendants communicated amongst themselves and with the Vendor Defendants about the scheme primarily using personal email accounts, while the Vendor Defendants conducted official Polar business with the Executive Defendants primarily using their professional email accounts.

7. From at least in or about 2009 through in or about July 2021, the Executive Defendants, along with two co-conspirators not named herein ("CC-1" and "CC-2"), received unlawful payments, either directly or through various limited liability companies they controlled, in excess of approximately $23 million in kickback payments or disbursements received as a result of their ownership of conflicted companies. Additionally, a financial analysis conducted at Polar's

direction estimates that, as a result of the fraudulent scheme, Polar suffered at least approximately $52 million in losses between in or about 2009 and in or about July 2021.

THE EXECUTIVE DEFENDANTS

8.     At various points between in or about 2009 and in or about July 2021, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, along with CC-1 and CC-2, were employed in senior positions working for Polar.

a.     WINKELBAUER was a Polar employee between approximately 2003 and approximately 2007. In 2007, the Courier Company hired him. Although WINKELBAUER was an employee of the Courier Company between in or about 2007 and July 2021, for the majority of his employment with the Courier Company, the Courier Company allowed WINKLEBAUER to "second" at Polar, in other words, to work for Polar in senior leadership roles. Specifically, from in or about 2007 through in or about 2014, WINKELBAUER served as Polar's Vice President of Marketing, Revenue Management, and Network Planning. From in or about 2018 until he was terminated in or about July 2021, WINKELBAUER served as Polar's Chief Operating Officer and Executive Vice President.

b.     KURIEN was hired by Polar in or about 2008. From approximately 2008 through approximately 2014, KURIEN served as Senior Director of Business Development and Excellence. In approximately 2014, KURIEN succeeded WINKELBAUER as the Vice President of Marketing, Revenue Management, and Network Planning, a position in which he remained until his employment was terminated in or about July 2021.

c.     LLEWELLYN was hired by Polar in or about 2006. In or about January 2017, LLEWELLYN was named the Vice President of Operations, System Performance, and

5

Quality for Polar, a position in which he remained until his employment was terminated in or about July 2021.

      d.     SCHIRMER was hired by Polar in or about 2010. In or about 2013, SCHIRMER was promoted to Senior Director of Customer Services for the Americas, a position in which he remained until his employment was terminated in or about July 2021.

      e.     CC-1 was hired by Polar in or about 2007, as Vice President of Sales and Marketing for the Americas, a position in which he remained until his employment was terminated in or about July 2021.

      f.     CC-2 was hired by Polar in or about 2002, as a Regional Sales Manager. In or about 2010, CC-2 was named the Senior Director of Global Sales, a position in which he remained until his employment was terminated in or about July 2021.

      9.     Through these employment positions, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, along with CC-1 and CC-2, gained significant knowledge of and influence over Polar's operations, including sales, contracting, and selection of vendors. WINKELBAUER and KURIEN, in particular, oversaw significant segments of Polar's business and, thus, had visibility into Polar's sales, customer relationships, and operations, including ground handling and trucking. In general, the Executive Defendants often had the ability to propose vendors, to advocate on behalf of certain vendors or customers, and to exercise significant influence over both Polar's selection of vendors and the rates offered to its customers.

<u>THE GSA-RELATED ILLICIT PAYMENTS</u>

      10.     From in or about 2009 through in or about July 2021, Polar relied heavily upon GSAs in the United States to sell available cargo space, often to freight forwarders. GSAs typically

handled sales for specific geographic regions, and were compensated primarily based on how much cargo they sold on behalf of Polar. At relevant points during this period, in various combinations, LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, agreed with BENJAMIN WEI, a/k/a "Ben Wei," and FABIOLA CINO, the defendants, and others, to defraud Polar through the payment of kickbacks to WINKELBAUER, KURIEN, SCHIRMER, and CC-1, or by concealing the vendor ownership interests of WINKELBAUER, KURIEN, and CC-1, in exchange for favorable business arrangements and contracts with Polar. Before discovering the fraud in or about July 2021, Polar had no knowledge of the kickbacks paid by the GSAs, or that any of the Executive Defendants owned a Polar GSA.

11.     Three particular GSA-related arrangements are set forth in greater detail below.

### *Griffin*

12.     Griffin Cargo ("Griffin") is owned and operated by BENJAMIN WEI, a/k/a "Ben Wei," the defendant, and others. Between in or about 2003 and at least in or about 2021, Polar contracted with Griffin to sell domestic cargo space. In or about early 2012, LARS WINKELBAUER and ABILASH KURIEN, the defendants, along with CC-1, entered into an agreement with WEI and others, to accept kickbacks in exchange for awarding Griffin—which already served as Polar's GSA for the Pacific Northwest—a contract to represent Polar in the Northeast and Texas. More specifically, WEI agreed to pay WINKELBAUER, KURIEN, and CC-1 a percentage of Griffin's net profits derived from its contracts with Polar on approximately a monthly basis.

13.     In total, WEI and others directed payment of at least approximately $3 million from profits derived from Polar to limited liability companies controlled by WINKELBAUER, KURIEN, and CC-1.

*Ultimate*

14.     Ultimate Logistics GSA, LLC ("Ultimate") is operated by a third co-conspirator not named herein ("CC-3"). Since in or about 2013, Ultimate has been co-owned in equal parts by CC-3 and by CC-1, and LARS WINKELBAUER and ABILASH KURIEN, the defendants, through limited liability companies that they control. Between in or about 2013 and in or about 2021, CC-3 was falsely presented to Polar as the sole owner of Ultimate. In exchange for receiving distributions based on their concealed and conflicted ownership interests in Ultimate, WINKELBAUER, KURIEN, and CC-1 used their employment positions with Polar to ensure that Ultimate received favorable contracts, including contracts to serve as Polar's GSA in the Midwest region, beginning in or about 2013. In or about 2019, WINKELBAUER, KURIEN, and CC-1 also arranged for the expansion of Ultimate's contract with Polar to include the profitable Chicago, Illinois region, without any competitive bidding process.

15.     As a result of the efforts of WINKELBAUER, KURIEN, and CC-1, Ultimate was paid substantial commissions by Polar and, in turn, WINKELBAUER, KURIEN, and CC-1 collected substantial distributions as co-owners of Ultimate. For example, on or about January 17, 2015, KURIEN emailed CC-1, CC-3, and WINKELBAUER "the breakdown for December" 2014, setting forth that Ultimate had earned a commission of approximately $104,000 from Polar in the prior month, and the distributions to be made to CC-3 and the limited liability companies associated with CC-1, WINKLEBAUER, and KURIEN.  WINKELBAUER, whose limited

liability company was set to receive approximately $22,715 based on Ultimate's work for Polar in December 2014, replied, in substance and in part, "WTF????????? What? Amazing."

16.    In total, Ultimate paid approximately $7 million in ownership distributions from profits derived from Polar to limited liability companies controlled by WINKELBAUER, KURIEN, and CC-1.

### *Gateway*

17.    Gateway Cargo Consolidators, LLC ("Gateway") is owned and operated by FABIOLA CINO, the defendant, and the spouse of ALVARO LOPEZ, the defendant. From in or about November 2015 through at least in or about 2021, Polar contracted with Gateway to sell domestic cargo space for the Miami region. Beginning in at least in or about early 2016, CINO agreed to pay kickbacks to CC-1, and to ABILASH KURIEN and ROBERT SCHIRMER, the defendants, in the form of a percentage of Gateway's net profits arising from its contract with Polar, in exchange for Polar's use of Gateway as its GSA in the Miami region and other favorable business arrangements. In or about August 2020, at or about the same time that Gateway's territory was expanded to include Central America, and its sales commission increased, CINO, CC-1, KURIEN, and SCHIRMER agreed to share the kickback payments paid by Gateway with LARS WINKELBAUER, the defendant.

18.    In total, Gateway paid in excess of $900,000 in kickbacks, from profits derived from Polar, to limited liability companies controlled by KURIEN, SCHIRMER, WINKELBAUER, and CC-1.

### THE FREIGHT FORWARDER-RELATED ILLICIT PAYMENTS

19.    From in or about 2009 through in or about July 2021, Polar contracted with freight forwarders to sell available cargo space on behalf of downstream shipping customers, who, in turn,

paid freight forwarders to secure cargo space and coordinate logistics. At relevant points during this period, BENJAMIN WEI, a/k/a "Ben Wei," ORLANDO WONG, ALVARO LOPEZ, and PATRICK LAU, a/k/a "Pat Lau," the defendants, and others, defrauded Polar by agreeing to pay and actually paying kickbacks to, in various combinations, LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, and CC-1 and CC-2, in exchange for favorable rates for cargo space, preferred access to cargo space, and involvement in customer incentive programs. These kickbacks were typically calculated based on how many kilograms of cargo the freight forwarders had shipped with Polar during a particular period. At no point before the discovery of the fraud in or about July 2021 were the kickbacks from freight forwarders known to Polar.

20.    Illicit payments made by four particular freight-forwarders are set forth in greater detail below.

### *Vizion & Able*

21.    Vizion Logistics, LLC ("Vizion") is owned and operated by BENJAMIN WEI, a/k/a "Ben Wei, and others. Beginning in or about 2004, WEI approached CC-2 about accepting kickbacks in exchange for providing favorable cargo rates and preferred allocation of cargo space to Vizion. CC-2 agreed to accept kickbacks from WEI and others, and kept those kickbacks for himself. In or about 2009—not long after CC-1 joined Polar—CC-1 and CC-2 agreed to accept and share kickback payments made to them by Vizion, as well as by Able Freight SVCS, LLC ("Able"), a freight forwarder owned and operated by ORLANDO WONG, the defendant. In or about 2010, CC-1 and CC-2 agreed to share a percentage of the kickbacks they collected from WEI and WONG on behalf of Vizion and Able, respectively, with LARS WINKELBAUAER, the defendant. In exchange for these kickbacks, Vizion and Able were afforded favorable business

arrangements with Polar, including for example, participation in incentive programs and preferential cargo rates. Able, in particular, was afforded these benefits despite the fact that Able often had payment delinquencies with Polar.

22.     In total, between in or about 2009 and in or about July 2021, Vizion and Able, through their respective owners, WEI and WONG, paid at least approximately $1,663,004 in kickbacks to limited liability companies controlled by WINKELBAUER, CC-1, and CC-2.

<u>COD</u>

23.     Cargo on Demand, Inc. ("COD") is operated by PATRICK LAU, a/k/a "Pat Lau," the defendant. Between in or about 2016 and in or about July 2021, LAU paid kickbacks to CC-1 and to LARS WINKELBAUER, ABILASH KURIEN, and ROBERT SCHIRMER, the defendants, in exchange for favorable business arrangements with Polar, including access to cargo space on preferred terms, despite COD often being past due on its accounts with Polar. The payment of these kickbacks was often facilitated by ALVARO LOPEZ, the defendant, in his capacity as a sales employee of Griffin.

24.     LAU and KURIEN corresponded on several occasions about the favorable treatment afforded to COD as a result of these kickbacks. For example, on or about March 9, 2021, LAU contacted KURIEN to register a complaint about the rates being offered to COD to ship cargo with Polar. When KURIEN pushed back, LAU wrote to KURIEN, in substance and in part, "Well Abi, just so you know I am doing my business not just for myself, but also protecting the Brotherhood and is pie ya . . ." KURIEN responded to LAU, in substance and in part, "Just so you know, your shipments don[']t cover the whole cost of transportation and is a loss of Polar and we cannot be seen further reducing that rate from where it is agreed to be. I don[']t like it when you say you are protecting the brotherhood because you know very well - we have also been

protecting you...You were late many months on the receivables[,] etc[.][,] and we still made sure you are not put on cash and your BSA remains valid." KURIEN's reference to COD's "BSA" is a reference to the "blocked space agreement" between COD and Polar, under which Polar guaranteed space for COD at certain rates. KURIEN later forwarded the exchange to SCHIRMER, who responded to KURIEN, in substance and in part, "Should we pay him to move the cargo...?"

25.    In total, between in or about 2016 and in or about July 2021, COD, through its owner, LAU, paid approximately $1.6 million in kickbacks either directly to CC-1, CC-2, KURIEN, WINKELBAUER, and SCHIRMER, or through limited liability companies that they controlled.

### *Fato*

26.    Fato LLC ("Fato") is owned and operated by ALVARO LOPEZ, the defendant. In or about 2017, LOPEZ, at times in conjunction with FABIOLA CINO, the defendant, began to pay kickbacks on an intermittent basis to CC-1 and to ABILASH KURIEN and ROBERT SCHIRMER, the defendants, in exchange for favorable business arrangements and contracts with Polar, including preferential cargo space terms and identification as a preferred freight forwarder of Polar. These benefits were awarded to Fato despite Fato maintaining substantial past due balances in its accounts with Polar. In or about October 2018, LOPEZ began to pay kickbacks to LARS WINKELBAUER, the defendant, in addition to the kickbacks paid to CC-1, KURIEN, and SCHIRMER. Typically, LOPEZ paid these kickbacks based on a rate per kilogram that Fato shipped with Polar. In total, between in or about 2017 and in or about July 2021, Fato, through its

owner, LOPEZ, paid at least approximately $800,000 in kickbacks to CC-1, KURIEN, SCHIMER, and WINKELBAUER either directly or through limited liability companies that they controlled.

## THE GROUND HANDLING AND TRUCKING-RELATED ILLICIT PAYMENTS

27.     Polar also utilized third-party vendors for ground handling and trucking. Ground handling vendors were responsible for loading and unloading cargo, storing cargo, coordinating ground equipment, and performing other logistical services. Trucking vendors were responsible for transporting cargo to and from airports to be loaded onto or delivered from Polar flights. From in or about in or about 2019 through in or about July 2021, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, the defendants, agreed with ORLANDO WONG, the defendant, and others, to defraud Polar by concealing the ownership interests of WINKELBAUER, KURIEN, LLEWELLYN, and CC-2 in A-1 Handling, LLC ("A-1 Handling"), a ground handling vendor, in exchange for favorable business arrangements and contracts with Polar. Additionally, WINKELBAUER, KURIEN, and LLEWELLYN agreed with others to defraud Polar by accepting kickbacks from a particular trucking vendor (the "Trucking Vendor") in exchange for advocating for favorable contractual arrangements for the Trucking Vendor with Polar. At no point before the discovery of the fraud in or about July 2021 were the kickbacks paid by the Trucking Vendor, or the conflicted ownership arrangement with A-1 Handling, known to Polar.

28.     Two ground handling and trucking-related arrangements are set forth in greater detail below.

### A-1 Handling

29.     A-1 Handling is co-owned by ORLANDO WONG, the defendant, and a limited liability company ("LLC-1") registered in Wyoming in the names of family members of LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLYN, the defendants, and

CC-2. A-1 Handling is, in fact, controlled by WINKELBAUER, KURIEN, LLEWELLYN, and CC-2. WINKELBAUER, KURIEN, LLEWELLYN, and CC-2 took concerted steps to conceal their involvement in LLC-1. For example, on or about June 3, 2020, a representative of a company that was hired to act as LLC-1's registered agent emailed KURIEN indicating that the company would no longer provide "nominee service." KURIEN responded, asking, in substance and in part, "[i]f there is no nominee service and if someone searches who the company belongs to, they will be able to see the four names?" The representative responded that the "names are not public record."

30.     A-1 Handling was formed in or about 2019 as part of a concerted effort by WINKELBAUER, KURIEN, LLEWELLYN, CC-2, and WONG to replace Polar's existing ground handling vendor at Los Angeles International Airport ("LAX"). As part of this effort, A-1 Handling was falsely presented by WONG to Polar as being run and controlled solely by WONG. Between in or about March 2019 and in or about April 2020, WINKELBAUER, KURIEN, LLEWELLEN, and CC-2 used their positions at Polar to ensure that A-1 Handling was selected as Polar's ground handler at LAX, despite internal opposition from other employees at Polar and the Parent Airline.

31.     In or about early 2021, A-1 Handling submitted a request for proposal to provide warehousing services for Polar in the Chicago region, despite never having previously operated in Chicago. During the selection process, LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLEN, the defendants, shared information with ORLANDO WONG, the defendant, about what was needed to successfully bid for the contract. Although A-1 Handling was among the highest cost bidders for the Chicago ground handling contract, A-1 Handling was selected by Polar to provide the Chicago warehousing services, based largely on the conflicted

14

recommendation of LLEWELLYN. In total, between 2020 and 2021, Polar paid A-1 Handling more than $5,000,000 for ground handling services.

### *The Trucking Vendor*

32.    From at least in or about 2009 through at least in or about 2021, Polar contracted with the Trucking Vendor. The Trucking Vendor is owned and operated by two individuals (respectively the "Trucking Owners"). Polar typically contracted with several trucking vendors selected based on a variety of variables, including location, equipment availability, and pricing. In or about 2019, the Trucking Vendor, through a company controlled by the Trucking Owners, began making regular payments to a limited liability company ("LLC-2") registered in the names of family members of LARS WINKELBAUER, ABILASH KURIEN, and CARLTON LLEWELLYN, the defendants, and, in fact, controlled by WINKELBAUER, KURIEN, and LLEWELLYN. In exchange, WINKELBAUER, KURIEN, and LLEWELLYN began assisting the Trucking Vendor in seeking an exclusive contract with Polar and advocating within Polar for an exclusive contract with the Trucking Vendor. Despite significant internal opposition from other employees at Polar, the exclusive contract proposal with the Trucking Vendor continued to move forward at WINKELBAUER's and LLEWELLYN's insistence, though it was not executed before WINKLEBAUER, KURIEN, and LLEWELLYN were terminated by Polar in or about July 2021.

33.    In total, the Trucking Vendor, through a company controlled by the Trucking Owners, paid in excess of approximately $1 million in kickbacks to WINKELBAUER, KURIEN, and LLEWELLYN through LLC-2.

### THE SKY X AIRLINES KICKBACKS

34.    Sky X Airlines, LLC ("Sky X") is owned and operated by SKYE XU, the defendant. XU also owned and operated a Polar freight forwarder customer, which had, at times

between in or about 2017 and in or about 2020, paid CC-2 for consulting work. In exchange, CC-2, among other things, assisted XU in securing cargo space with Polar for XU's freight forwarder. In or about September 2020 and again in or about March 2021, Sky X entered into capacity purchase agreements with Polar, under which Sky X purchased cargo space from passenger airlines—which had an abundance of available space at the time, as a result of the COVID-19 pandemic—which Polar then offered to its customers to transport cargo. The capacity purchase agreements were negotiated and executed in large part by ABILASH KURIEN, the defendant, as part of his role at Polar. The agreements provided for the payment of a commission to Polar, with the remaining revenues to be passed on to Sky X. In exchange for these favorable business arrangements with Polar, effectuated by KURIEN, XU agreed to pay kickbacks to LARS WINKELBAUER, the defendant, and to KURIEN and CC-2 through limited liability companies they controlled. At no point before the discovery of the fraud scheme in or about July 2021 was this kickback arrangement known to Polar. In total, between in or about September 2020 and in or about July 2021, Sky X, at the direction of SKYE XU, paid in excess of $4.4 million from profits derived from its contract with Polar to limited liability companies controlled by KURIEN, WINKELBAUER, and CC-2.

## POLAR'S DISCOVERY
## OF THE CONFLICTED OWNERSHIP ARRANGEMENTS AND KICKBACKS

35.     In or about the Summer of 2021, Polar discovered documentary evidence of the conflicted ownership arrangements and kickback agreements described above. Shortly thereafter, in or about July 2021, Polar terminated the employment of LARS WINKELBAUER, ABILASH

KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, and reported the conduct to law enforcement authorities.

## STATUTORY ALLEGATIONS

36.    From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, and honest services wire fraud, in violation of Title 18, United States Code, Section 1346.

37.    It was a part and an object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing

favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

38.    It was a further part and an object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowingly having devised and intending to devise a scheme and artifice to defraud another of its right of honest services through bribery and kickbacks by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1346, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
### (Wire Fraud)

The Grand Jury further charges:

39.    The allegations contained in paragraphs 1 through 35 are repeated and realleged as if fully set forth herein.

40.    From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON

LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value paid by XU, WEI, LOPEZ, CINO, WONG, LAU, and others—the owners of certain vendors and customers of Polar—in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT THREE

### (Honest Services Wire Fraud)

The Grand Jury further charges:

41.    The allegations contained in paragraphs 1 through 28 are repeated and realleged as if fully set forth herein.

42.    From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, knowingly having devised and intending to devise a scheme and artifice to defraud another of its right of honest services through bribery and kickbacks by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication

in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER secretly received money and other items of value from certain vendors and customers of Polar, in exchange for, among other things, advocating for and securing favorable contracts, shipping rates, and other incentives from Polar for the benefit of those vendors and customers.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT FOUR

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

43.     The allegations contained in paragraphs 1 through 28 are repeated and realleged as if fully set forth herein.

44.     From at least in or about 2009 through in or about July 2021, in the Southern District of New York and elsewhere, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

45.     It was a part and object of the conspiracy that LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, and others known and unknown, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, would

and did conduct and attempt to conduct such financial transactions, which transactions affected interstate and foreign commerce and involved the use of a financial institution which is engaged in, and the activities of which affect, interstate and foreign commerce, and which in fact involved the proceeds of specified unlawful activity, to wit, honest services wire fraud, in violation of Title 18, United States Code, Section 1346, and wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, WINKELBAUER, KURIEN, LLEWELLYN, and SCHIRMER agreed with XU, WEI, LOPEZ, CINO, WONG, LAU, and others, who are the owners of certain vendors and customers of Polar, to route illicit payments representing the proceeds of honest services fraud and wire fraud schemes to limited liability companies and associated bank accounts that the Executive Defendants opened and controlled, in a manner designed to conceal the Executive Defendants' relationships with the Vendor Defendants, and the defendants' involvement in the fraud schemes charged in Counts One through Three of this Indictment.

(Title 18, United States Code, Section 1956(h).)

## FORFEITURE ALLEGATIONS

46.     As the result of committing the wire fraud offenses charged in Counts One through Three of this Indictment, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, and ROBERT SCHIRMER, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money

21

in United States currency representing the amount of proceeds traceable to the commission of said offenses.

47.     As the result of committing the wire fraud offenses charged in Counts One and Two of this Indictment, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

48.     As a result of committing the money laundering offense charged in Count Four of this Indictment, LARS WINKELBAUER, ABILASH KURIEN, CARLTON LLEWELLYN, ROBERT SCHIRMER, SKYE XU, BENJAMIN WEI, a/k/a "Ben Wei," ALVARO LOPEZ, FABIOLA CINO, ORLANDO WONG, and PATRICK LAU, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real and personal, involved in said offense, or any property traceable to such property, including but not limited to a sum of money in United States currency representing the amount of property involved in said offense.

### Substitute Assets Provision

49.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third person;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON
*3-13-23*

DAMIAN WILLIAMS
United States Attorney

*03/13/2023*
*(CA)*

*SEALED INDICTMENT FILED
WARRANT WARRANTS
KN MANAN
USMJ*

23

Mod AO 442 (09/13) Arrest Warrant    AUSA Name & Telno: Danielle Kudla and Katherine Reilly (212-637-2304/6521)

# UNITED STATES DISTRICT COURT
### for the
### Southern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   23 Cr. |
| | ) | |
| ALVARO LOPEZ | ) | |
| | ) | CRIM 133 |
| | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*   ALVARO LOPEZ

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1349 (Conspiracy to Commit Honest Services Fraud and Wire Fraud)
18 U.S.C. §§ 1343, 1346, and 2 (Honest Services Wire Fraud)
18 U.S.C. §§ 1343 and 2 (Wire Fraud)
18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)

Date:   03/13/2023

*Issuing officer's signature*

The Honorable Katharine H. Parker
*Printed name and title*

City and state:   New York, NY

| Return | |
|---|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ | |
| Date: _____ | _____ *Arresting officer's signature* |
| | _____ *Printed name and title* |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 23-MJ-02712-REID (SEALED)

UNITED STATES OF AMERICA,
        Plaintiff,

V.

ALVARO LOPEZ, ET AL
        Defendant(s).
_____/

## ORDER

**THIS CAUSE** came before the Court and pursuant to proceedings it is thereupon, PURSUANT TO THE ARREST OF THE ABOVE NAMED DEFENDANT, THIS CASE IS HEREBY UNSEALED.

**DONE AND ORDERED** at Miami, Florida.

Dated: 4/12/2023

**Lisette Marie Reid**
**UNITED STATES MAGISTRATE JUDGE**

# MINUTE ORDER

Page 7

## Magistrate Judge Lisette Marie Reid

**Atkins Building Courthouse - 3rd Floor**   Date: 4/12/2023   Time: 2:00 p.m.

Defendant: ALVARO LOPEZ   J#: 53663-510   Case #: 23-MJ-02712-REID (SEALED)

AUSA: Jeremy Thompson   Attorney: Fernando Tamayo-Temp

Violation: DIST-S/NY/WARR/IND/CONSPIRACY TO COMMIT WIRE FRAUD   Surr/Arrest Date: 4/12/2023   YOB: 1972

Proceeding: Initial Appearance   CJA Appt: _____

Bond/PTD Held: ○ Yes  ○ No   Recommended Bond: _____

Bond Set at: _____   Co-signed by: _____

Language: English

☐ Surrender and/or do not obtain passports/travel docs

☐ Report to PTS as directed/or _____ x's a week/month by phone; _____ x's a week/month in person

☐ Random urine testing by Pretrial Services
Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses, except through counsel

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Disposition:
- deft present
- Deft advised of rights & charges
- $250,000 PSB w/ 2 co-signers required by Gov't
- Per deft's counsel → no available co-signers
- Bond reset for Monday
- deft shall not be released until special conditions of release are imposed
- Brady Order given

Time from today to _____ excluded from Speedy Trial Clock

| NEXT COURT APPEARANCE | Date: | Time: | Judge: | Place: |
|---|---|---|---|---|
| Report RE Counsel: | 4/17 | | | |
| PTD/Bond Hearing: | 4/17 | 10:00 | Reid | Miami |
| Prelim/Arraign or Removal: | 4/17 | | | |
| Status Conference RE: | | | | |

D.A.R. 14:05:30 // 14:36:16 // 14:49:17 // 14:58:25   Time in Court: 30 minutes

s/Lisette Marie Reid   Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:23-CR-00133

23-2712-MJ-REID

UNITED STATES OF AMERICA,
                                    Plaintiff,

**NOTICE OF TEMPORARY
APPEARANCE AS COUNSEL**

v.

FABIOLA GINA
Alvaro Lopez
                                    Defendant.

_____/

COMES NOW _____Fernando Tamayo_____ and

files this temporary appearance as counsel for the above named defendant(s) at initial appearance.

This appearance is made with the **understanding** that the undersigned counsel will fulfill any

**obligations imposed** by the Court such as **preparing and filing documents** necessary to

collateralize any personal surety bond which may be set.

Counsel's Name (**Printed**): _____Fernando Tamayo_____

Counsel's Signature: _____

Address (include City/State/Zip Code):

2601 S. Bayshore Dr PH1
MIAMI, FL 33155

Telephone: 305 546 0778       Florida Bar Number: 28530

Date: 4/12/23

```
MIME-Version:1.0
From:cmecfautosender@flsd.uscourts.gov
To:flsd_cmecf_notice
Bcc:
--Case Participants: Fernando LaTour Tamayo (ftamayo@coffeyburlington.com,
lmaltz@coffeyburlington.com, service@coffeyburlington.com), Noticing AUSA CR TP/SR
(usafls.transferprob@usdoj.gov), Magistrate Judge Lisette M. Reid (reid@flsd.uscourts.gov)
--Non Case Participants: United States Pretrial, Probation and PSIunit Office (Court Desk)
(flsp_cd@flsp.uscourts.gov)
--No Notice Sent:

Message-Id:23247098@flsd.uscourts.gov
Subject:Activity in Case 1:23-mj-02712-LMR USA v. Lopez et al Order Setting/Cancelling
```
Hearing
Content−Type: text/html

## U.S. District Court

## Southern District of Florida

## Notice of Electronic Filing

The following transaction was entered on 4/13/2023 at 1:51 PM EDT and filed on 4/13/2023

| | |
|---|---|
| **Case Name:** | USA v. Lopez et al |
| **Case Number:** | 1:23−mj−02712−LMR |
| **Filer:** | |
| **Document Number:** | 7(No document attached) |

**Docket Text:**
 **PAPERLESS Order as to Alvaro Lopez, Fabiola Cino. A Status Re: Bond Hearing is set for 4/14/2023 at 10:00 AM in Miami Division before MIA Duty Magistrate Judge. Signed by Magistrate Judge Lisette M. Reid on 4/13/2023. (mdc)**

**1:23−mj−02712−LMR−1 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Fernando LaTour Tamayo &nbsp &nbsp ftamayo@coffeyburlington.com, lmaltz@coffeyburlington.com, service@coffeyburlington.com

**1:23−mj−02712−LMR−1 Notice has not been delivered electronically to those listed below and will be provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:**

**1:23−mj−02712−LMR−2 Notice has been electronically mailed to:**

Noticing AUSA CR TP/SR &nbsp &nbsp Usafls.transferprob@usdoj.gov

Fernando LaTour Tamayo &nbsp &nbsp ftamayo@coffeyburlington.com, lmaltz@coffeyburlington.com, service@coffeyburlington.com

**1:23−mj−02712−LMR−2 Notice has not been delivered electronically to those listed below and will be**

provided by other means. For further assistance, please contact our Help Desk at 1−888−318−2260.:

(Revised 03/2020)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APPEARANCE BOND: _____

CASE NO.: ~~1-23-cr-00133-UA~~
23-2712- MJ REID

UNITED STATES OF AMERICA:

      Plaintiff,

v.                            USM #: S3663-510

ALVARO LOPEZ

      Defendant,

_____/

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ 250,000 PSB _____

## STANDARD CONDITIONS OF BOND

**The conditions of this bond are that the defendant:**

    1. Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

    2. May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

    3. May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

    4. Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

    5. Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

DEFENDANT: ALVARO LOPEZ
CASE NUMBER:
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: (✓) as directed or___ time(s) a week in person and___ time(s) a week by telephone;

___ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

___ d. Refrain from ___excessive OR ___abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

___ e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

___ f. Employment restriction(s): _____

___ g. Maintain or actively seek full-time employment;

___ h. Maintain or begin an educational program;

___ i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

___ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

___ k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office; Deft & counsel

✓ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

✓ m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.; except for work & court appearances IN NY

___ n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

DEFENDANT: ALVARO LOPEZ
CASE NUMBER:
PAGE THREE

_✓_o. **LOCATION MONITORING PROGRAM:** The defendant shall be monitored by the form of location monitoring and shall abide by all technology requirements as noted below, as well as contribute to the costs of services rendered based on ( ✓ ) ability to pay as determined by the U.S. Probation Officer – or – ( ) paid by U.S. Probation;

✓ Location monitoring technology at the discretion of the officer

__ Radio Frequency (RF) monitoring (Electronic Monitoring)

_ Active GPS Monitoring

__ Voice Recognition

✓ Curfew: You are restricted to your residence every day from _10:00 PM_ to _6:00 AM_, or as directed by the supervising officer.

**OR**

__ Home Detention: You are restricted to your residence at all times except for:

( ) medical

( ) substance abuse or mental health treatment

( ) court appearances

( ) attorney visits or court ordered obligations

( ) religious services

( ) employment

( ) other activities as pre-approved by the supervising officer

— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by ( ) Pretrial Services or ( ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:

( ) employment

( ) education

( ) religious services

( ) medical, substance abuse, or mental health treatment

( ) attorney visits

( ) court appearances

( ) court ordered obligations

( ) reporting to Pretrial Services

( ) other _____

__ q. Third-Party Custody: _____ will serve as a third party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18
— U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

DEFENDANT: ALVARO LOPEZ
CASE NUMBER:
PAGE FOUR

___s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

___t. Additional Sex Offense Conditions For Defendants Charged or Convicted of a Sexual Offense:

1. ( ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.
2. ( ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.
3. ( ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.
4. ( ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.
5. ( ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.
6. ( ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.
7. ( ) The defendant shall not be involved in any children's or youth organizations.
8. ( ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.
9. ( ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

___u. May travel to and from: SD OF NY FOR Court purposes, and must notify Pretrial Services of travel plans before leaving and upon return.

___v. Comply with the following additional conditions of bond:
Reside at the address on record

DEFENDANT: *Alvaro Lopez*
CASE NUMBER:
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: ALVARO LOPEZ
CASE NUMBER: 1:23-cr-00133-UA
PAGE SIX

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this 14 day of April, 2023 at MIAMI, Florida

Signed and acknowledged before me:

WITNESS: _____

MIAMI _____ FL _____
City          State

DEFENDANT: (Signature) _____
MIAMI _____ FLORIDA
City          State

### CORPORATE SURETY

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: _____

_____ _____
City          State

AGENT: (Signature) _____

PRINT NAME: _____

### INDIVIDUAL SURETIES

Signed this 12 day of April, 2023 at MIAMI, Florida

SURETY: (Signature) _____

PRINT NAME: Igor Petrovich

RELATIONSHIP TO DEFENDANT: Friend

MIAMI _____ FLORIDA
City          State

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

_____ _____
City          State

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

_____ _____
City          State

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____

PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____

_____ _____
City          State

### APPROVAL BY THE COURT

Date: 4/14/23 _____

UNITED STATES MAGISTRATE JUDGE

(Revised 03/2020)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APPEARANCE BOND: _____

CASE NO.: 1 23-cr-00133-UA

23-2712- MJ REID

UNITED STATES OF AMERICA:

        Plaintiff,

v.

ALVARO LOPEZ

        Defendant,

_____/

USM #: 53663-510

I, the undersigned defendant and I or we, the undersigned sureties, jointly and severally acknowledge that we and our personal representatives, jointly and severally, are bound to pay the United States of America, the sum of $ 250,000 PSB

## STANDARD CONDITIONS OF BOND

**The conditions of this bond are that the defendant:**

   1. Shall appear before this Court and at such other places as the defendant may be required to appear, in accordance with any and all orders and directions relating to the defendant's appearance in this case, including appearance for violation of a condition of the defendant's release as may be ordered or notified by this Court or any other United States District Court to which the defendant may be held to answer or the cause transferred. The defendant is required to ascertain from the Clerk of Court or defense counsel the time and place of all scheduled proceedings on the case. In no event may a defendant assume that his or her case has been dismissed unless the Court has entered an order of dismissal. The defendant is to abide by any judgment entered in such matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment. This is a continuing bond, including any proceeding on appeal or review, which shall remain in full force and effect until such time as the Court shall order otherwise.

   2. May not travel outside the Southern District of Florida unless otherwise approved by the Court prior to any such travel. The Southern District of Florida consists of the following counties: Broward, Highlands, Indian River, Martin, Miami-Dade, Monroe, Okeechobee, Palm Beach and St. Lucie.

   3. May not change his/her present address without prior notification and approval from the U.S. Probation Officer or the Court.

   4. Must cooperate with law enforcement officers in the collection of a DNA sample if the collection is required by 42 U.S.C. Section 14135a.

   5. Must not violate any federal, state or local law while on release in this case. Should the defendant come in contact with law enforcement he/she shall notify the U.S. Probation Officer within 72 hours.

DEFENDANT: *ALVARO LOPEZ*
CASE NUMBER:
PAGE TWO

## SPECIAL CONDITIONS OF BOND

In addition to compliance with the previously stated conditions of bond, the defendant must comply with the special conditions checked below:

✓ a. Surrender all passports and travel documents, if any, to Pretrial Services and not obtain any travel documents during the pendency of the case;

✓ b. Report to Pretrial Services as follows: (✓) as directed or___ time(s) a week in person and___ time(s) a week by telephone;

___ c. Submit to substance abuse testing and/or treatment, contribute to the cost of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

___ d. Refrain from ___excessive OR ___abstain from alcohol use or any use of a narcotic drug or other controlled substance, as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802), without a prescription by a licensed medical practitioner;

___ e. Participate in a mental health assessment and/or treatment and contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Officer;

___ f. Employment restriction(s): _____

___ g. Maintain or actively seek full-time employment;

___ h. Maintain or begin an educational program;

___ i. Avoid all contact with victims or witnesses to the crimes charged, except through counsel. The AUSA shall provide defense counsel and pretrial services with the names of all victims or witnesses. The prohibition against contact does not take effect until defense counsel receives the list. The prohibition against contact applies only to those persons on the list, but the prosecutor may expand the list by sending written notice to defense counsel and pretrial services.;

___ j. Avoid all contact with co-defendants and defendants in related cases, except through counsel;

✓ k. Refrain from possessing a firearm, destructive device or other dangerous weapons and shall surrender (if any), their concealed weapons permit to the U.S. Probation Office; *Dft & co-signer*

✓ l. None of the signatories may sell, pledge, mortgage, hypothecate, encumber, etc., any real property they own, until the bond is discharged, or otherwise modified by the Court;

✓ m. May not visit commercial transportation establishment: airports, seaport/marinas, commercial bus terminals, train stations, etc.; *except for work & court appearances in NY*

___ n. Defendant shall consent to the U.S. Probation Officer conducting periodic unannounced examinations of the defendant's computer equipment at his/her place of employment or on the computer at his/her residence which may include retrieval and copying of all data from the computer(s) and any internal or external peripherals to ensure compliance with this condition and/or removal of such equipment for the purpose of conducting a more thorough inspection; and consent at the direction of the U.S. Probation Officer to have installed on the defendant's computer(s), at the defendant's expense, any hardware or software systems to monitor the defendant's computer use;

DEFENDANT: ALVARO LOPEZ
CASE NUMBER:
PAGE THREE

✓ o. **LOCATION MONITORING PROGRAM:** The defendant shall be monitored by the form of location monitoring and shall abide by all technology requirements as noted below, as well as contribute to the costs of services rendered based on ( ✓ ) ability to pay as determined by the U.S. Probation Officer – or – ( ) paid by U.S. Probation;

✓ __ Location monitoring technology at the discretion of the officer

__ Radio Frequency (RF) monitoring (Electronic Monitoring)

__ Active GPS Monitoring

__ Voice Recognition

✓ Curfew: You are restricted to your residence every day from _10:00 PM_ to _6:00 AM_, or as directed by the supervising officer.

**OR**

__ Home Detention: You are restricted to your residence at all times except for:

( ) medical

( ) substance abuse or mental health treatment

( ) court appearances

( ) attorney visits or court ordered obligations

( ) religious services

( ) employment

( ) other activities as pre-approved by the supervising officer

— p. **RESIDENTIAL RE-ENTRY CENTER:** The defendant shall reside at a residential re-entry center or halfway house and abide by all the rules and regulations of the program. The cost to be paid by ( ) Pretrial Services or ( ) based on the defendant's ability to pay. You are restricted to the residential re-entry center/halfway house at all times except for:

( ) employment

( ) education

( ) religious services

( ) medical, substance abuse, or mental health treatment

( ) attorney visits

( ) court appearances

( ) court ordered obligations

( ) reporting to Pretrial Services

( ) other _____

— q. Third-Party Custody: _____ will serve as a third party custodian and will report any violations of the release conditions to the U.S. Probation Officer. Failure to comply with these requirements, the third party custodian can be subject to the provisions of 18 U.S.C. § 401, Contempt of Court.

— r. The defendant shall submit his person, property, residence, vehicle, papers, computers, (as defined in 18 U.S.C. 1030(e)(1)), other electronic communication or data storage devices or media, or office, to a search conducted by a United States Probation Officer. The defendant must warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search must be conducted at a reasonable time and in a reasonable manner.

DEFENDANT: ALVARO LOPEZ
CASE NUMBER:
PAGE FOUR

__ s. **Mandatory Adam Walsh Conditions:** Defendant shall abide by specified restrictions on personal associations, place of abode, or travel, to avoid all contact with an alleged victim of the crime and with a potential witness who may testify concerning the offense; report on a regular basis to a designated law enforcement agency, pretrial services agency or other agency; comply with a specified curfew (with electronic monitoring) and refrain from possessing a firearm, destructive device or other dangerous weapons.

__ t. <u>Additional Sex Offense Conditions For Defendants Charged or Convicted of a Sexual Offense</u>:

1. ( ) Defendant may not have contact with victim(s), or any child under the age of 18, unless approved by the Court or allowed by the U.S. Probation Officer.

2. ( ) The defendant shall not possess or use any data encryption technique or program and shall provide passwords and administrative rights to the U.S. Probation Officer.

3. ( ) Defendant shall participate in specialized sex offender evaluation and treatment, if necessary, and to contribute to the costs of services rendered based on ability to pay, as determined by the U.S. Probation Office.

4. ( ) Defendant shall not possess, procure, purchase or otherwise obtain any internet capable device and/or computer. Additionally, the defendant is prohibited from using another individual's computer or device that has internet capability.

5. ( ) Defendant is prohibited from establishing or maintaining any email account or social media account. Additionally, the defendant is prohibited from using another individual's email account or social media account. Must provide monthly or upon request, personal phone and credit card billings to Pretrial Services to confirm there are no services with any internet services provider.

6. ( ) Defendant is not permitted to enter places where children congregate including, but not limited to any play areas, playgrounds, libraries, children-themed restaurants, daycares, schools, amusement parks, carnivals/fairs, unless approved by the U.S. Probation Officer.

7. ( ) The defendant shall not be involved in any children's or youth organizations.

8. ( ) Defendant is prohibited from viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services.

9. ( ) The defendant shall participate in a maintenance polygraph examination to periodically investigate the defendant's compliance. The polygraph examination shall specifically address only defendant's compliance or non-compliance with the special conditions of release and shall not inquire into the facts of the pending criminal case against defendant. The defendant will contribute to the costs of services rendered (co-payment) based on ability to pay or availability of third party payment.

√ u. May travel to and from: SD OF NY FOR Court PURPOSES, and must notify Pretrial Services of travel plans before leaving and upon return.

√ v. Comply with the following additional conditions of bond:
Reside at the address on record

DEFENDANT: *Alvaro Lopez*
CASE NUMBER:
PAGE FIVE

## PENALTIES AND SANCTIONS APPLICABLE TO DEFENDANT

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for the defendant's arrest, a revocation of release, and order of detention, as provided in 18 U.S.C. §3148, forfeiture of any bail posted, and a prosecution for contempt as provided in 18 U.S.C. §401, which could result in a possible term of imprisonment or a fine.

The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

Title 18 U.S.C. §1503 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to intimidate or attempt to intimidate a witness, juror or officer of the court; 18 U.S.C. §1510 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to obstruct a criminal investigation; 18 U.S.C. §1512 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to tamper with a witness, victim or informant; and 18 U.S.C. §1513 makes it a felony criminal offense punishable by imprisonment and a $250,000 fine to retaliate against a witness, victim or informant, or threaten to do so.

It is a criminal offense under 18 U.S.C. §3146, if after having been released, the defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If the defendant was released in connection with a charge of, or while awaiting sentence, surrender for the service of a sentence, or appeal or certiorari after conviction for:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more the defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, the defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony, the defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor, the defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted, which means that the defendant will be obligated to pay the full amount of the bond, which may be enforced by all applicable laws of the United States.

DEFENDANT: ALVARO LOPEZ
CASE NUMBER: 1:23-cr-00133-UA
PAGE SIX

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this __14__ day of __April__, 20__23__ at __MIAMI__, Florida

Signed and acknowledged before me:                      DEFENDANT: (Signature) _____

WITNESS: _____                                 MIAMI                    FLORIDA
MIAMI            FL                                        City                     State
City            State

### CORPORATE SURETY

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: _____                                  AGENT: (Signature) _____

                                                         PRINT NAME: _____
City            State

### INDIVIDUAL SURETIES

Signed this _12_ day of _April_, 2023 at _MIAMI_, Florida    Signed this ___ day of _____, 20__ at _____, Florida

SURETY: (Signature) _____                      SURETY: (Signature) _____

PRINT NAME: Igor Petrovich                               PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: Friend                        RELATIONSHIP TO DEFENDANT: _____

MIAMI            Florida                                   City                     State
City            State

Signed this ___ day of _____, 20__ at _____, Florida    Signed this ___ day of _____, 20__ at _____, Florida

SURETY: (Signature) _____                      SURETY: (Signature) _____

PRINT NAME: _____                              PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____               RELATIONSHIP TO DEFENDANT: _____

City            State                                     City                     State

### APPROVAL BY THE COURT

Date: __4/14/23__                              _____
                                       UNITED STATES MAGISTRATE JUDGE

CM/ECF RESTRICTED

DEFENDANT: ~~Xxxxxxxx~~ ALVARO LOPEZ
CASE NUMBER: 1:23-cr-00133-UA
PAGE SEVEN

## PENALTIES AND SANCTIONS APPLICABLE TO SURETIES

Violation by the defendant of any of the foregoing conditions of release will result in an immediate obligation by the surety or sureties to pay the full amount of the bond. Forfeiture of the bond for any breach of one or more conditions may be declared by a judicial officer of any United States District Court having cognizance of the above entitled matter at the time of such breach, and if the bond is forfeited and the forfeiture is not set aside or remitted, judgment may be entered upon motion in such United States District Court against each surety jointly and severally for the amount of the bond, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and other laws of the United States.

## SIGNATURES

I have carefully read and I understand this entire appearance bond consisting of seven pages, or it has been read to me, and, if necessary, translated into my native language, and I know that I am obligated by law to comply with all of the terms of this bond. I promise to obey all conditions of this bond, to appear in court as required, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions outlined in this bond for violations of the terms of the bond.

If I am an agent acting for or on behalf of a corporate surety, I further represent that I am a duly authorized agent for the corporate surety and have full power to execute this bond in the amount stated.

### DEFENDANT

Signed this 14 day of April, 20 23 at MIAMI, Florida

Signed and acknowledged before me:                    DEFENDANT: (Signature) _____

WITNESS: Fernando Tamayo          ADDRESS: 3340 NE 190th ST A

ADDRESS: 2601 S Bayshore Dr       MIAMI                    ZIP: 33180

PH1 MIAMI, FL    ZIP: 23155        TELEPHONE: 5403265901

### CORPORATE SURETY

Signed this _____ day of _____, 20___ at _____, Florida

SURETY: _____           AGENT: (Signature) _____

ADDRESS: _____          PRINT NAME: _____

_____ ZIP: _____       TELEPHONE: _____

### INDIVIDUAL SURETIES

Signed this 12 day of April, 2023 at MIAMI, Florida   Signed this ___ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____                   SURETY: (Signature) _____

PRINT NAME: Igor A. Petrovith                          PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: Friend                     RELATIONSHIP TO DEFENDANT: _____

ADDRESS: 7930 Douglas St                               ADDRESS: _____

Hollywood FL    ZIP: 33024                             _____ ZIP: _____

TELEPHONE: 9544447380                                  TELEPHONE: _____

Signed this ___ day of _____, 20___ at _____, Florida   Signed this ___ day of _____, 20___ at _____, Florida

SURETY: (Signature) _____                   SURETY: (Signature) _____

PRINT NAME: _____                           PRINT NAME: _____

RELATIONSHIP TO DEFENDANT: _____            RELATIONSHIP TO DEFENDANT: _____

ADDRESS: _____                              ADDRESS: _____

_____ ZIP: _____                          _____ ZIP: _____

TELEPHONE: _____                            TELEPHONE: _____

# COURT MINUTES

Page 4

## Magistrate Judge Lisette Marie Reid

**Atkins Building Courthouse - 3rd Floor**     Date: 4/14/23     Time: 10:00 a.m.

Defendant: 1) Alvaro Lopez     J#: 53663-510     Case #: 23-2712-MJ-REID

AUSA: Katie Guthrie     Attorney: Fernando Tamayo, Temporary Counsel

Violation: Warr/Ind/SD-NY/Consp to Commit Honest Services Fraud, Wire Fraud & Money Laundering

Proceeding: Status Re: Cosigners on Bond & Conditions     CJA Appt:

Bond/PTD Held: ☑ Yes ☐ No     Recommended Bond:

Bond Set     **$250,000 personal surety**     Co-signed by:

☑ Surrender and/or do not obtain passports/travel docs

☑ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☑ No firearms

☑ Not to encumber property *including the co-signer*

☑ May not visit transportation establishments *except for work & court appearances in N.Y.*

☐ Home Confinement/Electronic Monitoring and/or *to be determined by PTS* Curfew *10:00* pm to *6:00* am, paid by *deft*

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☑ Travel extended to: SD of NY *for court purposes & must notify PTS prior to traveling*

☑ Other: *Reside at the address on record*

Language: English

Disposition:

 *Brady Order given*

*Report Re: Counsel & Removal 4/17*

*CONDITIONS not imposed*

*Bond hg held*

- #250,000 PSB w/1 Co-signer &

- #250,000 10% (no Nebbia)

(deft released)

- The 10% bond due on Monday 4/17/23

Time from today to _____ excluded from Speedy Trial Clock

---

**NEXT COURT APPEARANCE**     Date:     Time:     Judge:     Place:

Report RE Counsel:

PTD/Bond Hearing:

Prelim/Arraign or Removal:

Status Conference RE:

D.A.R. 10:14:45     Time in Court: 10 minutes

# COURT MINUTES

## Chief Magistrate Judge Edwin G. Torres

**King Building Courtroom 10-5**  Date: 4/17/23  Time: 10:00 a.m.

Defendant: 1) Alvaro Lopez  J#: Bond  Case #: 23-2712-MJ-REID

AUSA: Dayron Silverio  Attorney: Fernando Tamayo, Temporary Counsel

Violation: Warr/Ind/SD-NY/Consp to Commit Honest Services Fraud, Wire Fraud & Money Laundering

Proceeding: Report Re: Counsel, Removal  CJA Appt: _____

Bond/PTD Held: ☐ Yes  ☐ No  Recommended Bond: _____

Bond Set at: $250,000 psb, $250,000 w/10%  Co-signed by: _____

Language: English

☐ Surrender and/or do not obtain passports/travel docs

| Disposition: |
| --- |
| *Brady Order given* |
| Counsel and Defendants not present. |
| RESET |

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services _____ Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Time from today to _____ excluded from Speedy Trial Clock

| NEXT COURT APPEARANCE | Date: | Time: | Judge: | Place: |
| --- | --- | --- | --- | --- |
| *Report RE Counsel:* | 4/18/23 | 10:00 | Miami Duty | |
| PTD/Bond Hearing: | | | | |
| *Removal:* | 4/18/23 | 10:00 | Miami Duty | |
| Status Conference RE: | | | | |

D.A.R. 11:12:19  Time in Court: 2

48

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No: 23-MJ-2712-REID

United States of America
    Plaintiff,

    v.

                    Charging District's Case No.  23-CRIM-133

1) Alvaro Lopez,
    Defendant.

_____/

## WAIVER OF RULE 5 & 5.1 REMOVAL/IDENTITY HEARINGS

I understand that I have been charged in another district, the **Southern District of New York.**

I have been informed of the charges and of my rights to:

(1)     retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)     an identity hearing to determine whether I am the person named in the charges;

(3)     production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)     a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)     a hearing on any motion by the government for detention;

(6)     request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my rights to: **(check those that apply)**

[✓] An identity hearing and production of the warrant.

[ ] A preliminary hearing.

[ ] A detention hearing in the Southern District of Florida.

[ ] An identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled to in this district. I request that those hearings be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date: 4/18/2023

_____
Defendant's Signature

_____
Edwin G. Torres
United States Chief Magistrate Judge

# COURT MINUTES

## Chief Magistrate Judge Edwin G. Torres

### King Building Courtroom 10-5     Date: 4/18/2023    Time: 10:00 a.m.

Defendant: 1) Alvaro Lopez     J#: BOND     Case #: 23-MJ-2712-REID

AUSA: Elena Smukler     Attorney: Fernando LaTour Tamayo -TEMP COUNSEL

Violation: WARR/INDICT/SD-NY/CONSP TO COMMIT HONEST SERVICES FRAUD, WIRE FRAUD & MONEY LAUNDERING

Proceeding: Report RE: Counsel, Removal Hearing     CJA Appt:

Bond/PTD Held: ○ Yes   ○ No     Recommended Bond:

Bond Set at: $250K PSB; $250K w/10%     Co-signed by:

☐ Surrender and/or do not obtain passports/travel docs

☐ Report to PTS as directed/or _____ x's a week/month by phone: _____ x's a week/month in person

☐ Random urine testing by Pretrial Services _____ Treatment as deemed necessary

☐ Refrain from excessive use of alcohol

☐ Participate in mental health assessment & treatment

☐ Maintain or seek full-time employment/education

☐ No contact with victims/witnesses

☐ No firearms

☐ Not to encumber property

☐ May not visit transportation establishments

☐ Home Confinement/Electronic Monitoring and/or Curfew _____ pm to _____ am, paid by _____

☐ Allowances: Medical needs, court appearances, attorney visits, religious, employment

☐ Travel extended to: _____

☐ Other: _____

Language: English

Disposition:

**\*Brady Order Given\***

**Counsel appears for the SD/FL only.**

Defendant **WAIVES** Removal, Waiver

Executed and **ORDERED** removed to

the SD/NEW York

Time from today to _____ excluded from Speedy Trial Clock

| NEXT COURT APPEARANCE | Date: | Time: | Judge: | Place: |
|---|---|---|---|---|
| Report RE Counsel: | | | | |
| PTD/Bond Hearing: | | | | |
| Prelim/Arraign or Removal: | | | | |
| Status Conference RE: | | | | |

D.A.R. 10:09:06     Time in Court: 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 23-MJ-2712-REID

United States of America
      Plaintiff,

    v.

1) Alvaro Lopez,
      Defendant.

_____/

## ORDER OF REMOVAL

It appearing that in the **Southern District of New York**, an Indictment was filed against the above-named defendant on a charge of **WARR/INDICT/SD-NY/CONSP TO COMMIT HONEST SERVICES FRAUD, WIRE FRAUD & MONEY LAUNDERING**, and that the defendant was arrested in the Southern District of Florida and was given a hearing before United States Magistrate Judge Edwin G. Torres at Miami, Florida, which officially committed the defendant for removal to the **Southern District of New York**, it is ORDERED AND ADJUDGED that the defendant be removed to the above-named district for trial on said charge.

And it further appearing that the defendant waived further hearing in the said removal proceedings and was held by the Magistrate Judge Edwin G. Torres for removal and posted bail in the amount of **$250K PSB; $250K w/10%** which was approved by the United States Magistrate Judge Edwin G. Torres, and it is further ORDERED that the defendant shall appear in the aforesaid district at such times and places as may be ordered by that District Court, in accordance with the terms and conditions of aforesaid bond furnished by the defendant, and it is further ORDERED that the funds, plus interest, which may have been deposited on behalf of this defendant with the Clerk of the Court under Bail Reform Act be transferred to the district where removed.

DONE AND ORDERED at Miami, Florida on 4/18/2023.

Edwin G. Torres
United States Chief Magistrate Judge